UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ARIANA SWARTZ,

       Plaintiff,                        Case No. 16-cv-12396
                                                Hon. Matthew F. Leitman

v.

THE PROCTER AND GAMBLE
MANUFACTURING COMPANY *et al.*,

       Defendants.
_____/

## OPINION AND ORDER (1) GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (ECF #27) AND (2) DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT (ECF #33)

In this action, Plaintiff Ariana Swartz alleges that a Tide laundry detergent POD designed and manufactured by Defendants The Procter and Gamble Manufacturing Company and Proctor and Gamble Distributing, LLC (collectively, "P&G") "exploded" and "sprayed" its contents onto her clothes and body, causing a chemical burn on her left breast. (First Am. Compl. at ¶¶ 9-12, ECF #6 at Pg. ID 21.) P&G has now moved for summary judgment on all of Swartz's claims (*see* P&G Mot., ECF #27), and Swartz has moved for partial summary judgment on her claim that P&G failed to warn her of the alleged dangers of using the PODs (*see* Swartz Mot., ECF #33).  For the reasons that follow, P&G's motion is **GRANTED IN PART AND DENIED IN PART** and Swartz's motion is **DENIED**.

# I

In September 2014, Swartz lived with her parents in Detroit, Michigan. (*See* Swartz Dep. at 6-7, ECF #27-2 at Pg. ID 365.) She used her parents' washing machine, dryer, and laundry detergent to do her laundry. (*See id.* at 24-25, Pg. ID 369.)

Before leaving for work one day, Swartz decided to do a load of laundry. (*See id.* at 35, Pg. ID 372.) Instead of using liquid or powder laundry detergent to wash her clothes, Swartz used a Tide POD. (*See id.* at 35, Pg. ID 372.) A POD contains concentrated detergent in a dissolvable packet. (*See id.* at 27-28, Pg. ID 370.) Swartz obtained the POD from a package of PODs that her mother had purchased from a retail location in or around Detroit. (*See id.* at 32-33, Pg. ID 371; *see also* ECF #46-3 at Pg. ID 1805.)

After Swartz "pulled [the] Tide POD out of the package," it "just popped," partially exploding in her hand. (Swartz Dep. at 35, ECF #27-2 at Pg. ID 372.) About one-half of the concentrated detergent in the POD "squirted on [Swartz], [her] neck, [and on her] hands." (*Id.*) The detergent also sprayed on her shirt (*See id.*)

Following the explosion, Swartz immediately "washed [her] hands" and "wiped [the moisture from the POD] off [her] face," neck, and other parts of her body that she believed came into contact with the detergent. (*Id.* at 36-40, Pg. ID 372-73.) She also changed her shirt, which "had a wet stain on it because of the Tide

POD." (*Id.* at 36, Pg. ID 372.)  But Swartz did not change her bra. (*See id.*)  She left her bra in place because, at that time, she "didn't think that the bra got any [moisture from the POD] on it." (*Id.*)  She then put the remaining one-half of the exploded POD into the washing machine, started her load of laundry, and left for work. (*See id.*)

About two hours later, Swartz began to experience "[e]xtreme discomfort" on her left breast. (*Id.* at 41, pg. ID 373.)  Swartz says that she felt an "itching, a nagging itching, like the worst mosquito bite ever." (*Id.*)  Swartz then discovered that some of her skin on her breast had "peeled off and stuck to … the inner side of [her] bra." (*Id.*)  Swartz realized that the concentrated detergent from the POD had seeped through her shirt onto her bra (which, as noted above, she had not changed because she did not believe that it had come into contact with the detergent), and she concluded that the detergent on her bra came into contact with, and a caused a chemical burn on, her breast. (*See id.* at 42. Pg. ID 374.)  Swartz seeks damages related to that burn in this action.

## II

Swartz filed her First Amended Complaint on July 7, 2016. (*See* First. Am. Compl., ECF #6.)  She brings the following claims against P&G related to the POD:

- Negligent design/design defect;

- Negligent manufacture/manufacturing defect;

- Failure to warn;

- Breach of express warranty; and

- Breach of implied warranty.

P&G moved for summary judgment on all of Swartz's claims on December 1, 2017. (*See* ECF #27.)  On December 5, 2017, Swartz moved for partial summary judgment on her failure-to-warn claim. (*See* ECF #33.)  The Court held a hearing on both motions on April 4, 2018.  Following the hearing, the parties submitted supplemental briefs. (*See* ECF ## 46, 47.)

## III

Both parties argue that they are entitled to summary judgment under Federal Rule of Civil Procedure 56.  A movant is entitled to summary judgment under this rule when it "shows that there is no genuine dispute as to any material fact...." *SEC v. Sierra Brokerage Servs., Inc.*, 712 F.3d 321, 326-27 (6th Cir. 2013) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)) (quotations omitted).

When a moving party satisfies its "burden of production" to show that "'there is an absence of evidence to support the nonmoving party's case' … the nonmoving party then must go beyond the pleadings and by affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Moore v. Philip Morris Companies*, *Inc.*, 8 F.3d 335, 339 (6th Cir. 1993) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325

(1986)).  Indeed, the non-moving party "must present significant probative evidence … to defeat [a supported] motion for summary judgment." *Id.* at 340.  When reviewing this record, "the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *Id.*  Summary judgment is not appropriate when "the evidence presents a sufficient disagreement to require submission to a jury." *Anderson*, 477 U.S. at 251-52.

## IV

## A

P&G moves for summary judgment on all of Swartz's claims on the basis that she cannot prove that her chemical burn was caused by the concentrated detergent from the POD. (*See* P&G Mot., ECF #27 at Pg. ID 347-51.)  The Court disagrees.

The Michigan Supreme Court's decision in *Skinner v. Square D Co.*, 516 N.W.2d 475 (Mich. 1994), is the seminal decision on tort-law causation principles under Michigan law.[1]  In *Skinner*, the court explained that "[i]t is well settled under Michigan law that a prima facie case for products liability requires proof of a causal connection between an established defect and injury." *Id.* at 478.  "While the plaintiff bears the burden of proof, the plaintiff is not required to produce evidence that positively eliminates every other potential cause. Rather, the plaintiff's evidence is

---

[1] Michigan substantive law governs in this diversity action. *See Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938).

sufficient if it establishes a logical sequence of cause and effect, notwithstanding the existence of other plausible theories, although other plausible theories may also have evidentiary support." *Id.* (internal quotation marks omitted). Simply put, "[t]he plaintiff must present substantial evidence from which a jury may conclude that it is more likely than not, but for the defendant's conduct, the plaintiff's injuries would not have occurred." *Id.* at 480.

The evidence here, when viewed in the light most favorable to Swartz, satisfies this standard. Swartz did not have a burn on her breast when she began doing her laundry. And only one thing happened to her breast between the time she started washing her clothes and the time the burn appeared on her breast roughly two hours later: her breast came into contact with the concentrated detergent from the POD. Under these circumstances, a jury could reasonably conclude, without speculating, that the concentrated detergent from the POD caused the burn on Swartz's breast. Indeed, when the evidence is viewed in the light most favorable to Swartz, it would appear to be mere speculation to conclude that the chemical burn on her breast was caused by anything other than the contact with the concentrated detergent.[2]

---

[2] P&G appears to suggest that the burn could have been caused not by the chemical make-up of the concentrated detergent, but, instead, by the extended contact between Swartz's moist bra and her breast. However, while extended contact between moist clothing and bare skin may cause some level of irritation, such contact would not result in a *chemical burn*.

The lack of other reasonable, potential causes for Swartz's chemical burn distinguishes her case from those in which the Michigan Supreme Court has found insufficient evidence of causation. Consider *Skinner* for instance. In *Skinner*, the plaintiffs brought a design defect claim against the manufacturer of an "on/off" switch that the plaintiffs' decedent had installed on a metal tumbling machine. The plaintiffs alleged that the switch had a large "phantom zone" that made it appear as if the switch was "off" when it was actually "on." *Id.* at 477. The plaintiffs insisted that this defect misled the decedent into electrocuting himself at a time when he mistakenly believed that power to his tumbling machine was "off."

The Michigan Supreme Court held that the plaintiffs failed to present sufficient evidence of causation. The court stressed that while the "plaintiffs' offered scenario [that the defect in the "on/off" switch caused the decedent to be electrocuted] is a *possibility* … so are countless others." *Id.* at 485 (emphasis in original). And the plaintiffs established "at most" that their theory of causation was "equally as probable as [the] other theories…." *Id.* Thus, plaintiffs' theory of causation was deficient because it rested upon "mere conjecture and possibilities." *Id.*

The Michigan Supreme Court reached the same conclusion in *Lowery v. Enbridge Energy Limited Partnership*, 898 N.W.2d 906 (Mich. 2017). The plaintiff in *Lowery* filed an action against an oil company in which he alleged that fumes from

an oil spill in a river near his property caused him to suffer certain negative health effects. *See id.* at 906-07. The trial court granted the oil company's motion for summary disposition on the ground that the plaintiff could not establish causation, and the Michigan Court of Appeals reversed. *See id.* at 906.

The Michigan Supreme Court then reinstated the trial court's ruling. The court noted that the plaintiff had shown only that (1) before the oil spill, he was not suffering from certain negative health effects and (2) after the spill, he was suffering from the complained-of negative health effects. *See id.* But there were other potential causes for the plaintiff's health issues besides the oil spill, including, but not limited to, side effects from plaintiff's medications and plaintiff's history of smoking. *See id.* at 921-22 (Markman, C.J., concurring).[3] And the plaintiff did not offer sufficient evidence to establish that his theory of causation – exposure to the fumes – was any more likely or probable than any of the other potential causes. *See id.* (Markman, C.J., concurring). Instead, the plaintiff argued *only* that because his health issues arose after the oil spill, they must have been caused by the spill. *See id.* at 907. That theory of causation rested upon "the logical fallacy of *post hoc*

---

[3] In the Court's discussion of *Lowery*, it relies on both the Michigan Supreme Court's order reinstating the trial court's ruling and the concurring opinion of Chief Justice Markman. Where the Court is relying on Chief Justice Markman's concurrence, it has specifically noted so above.

reasoning" and amounted to "mere speculation" and "conjecture" that was insufficient to establish causation. *Id.* at 907 (quoting *Skinner*, 516 N.W.2d at 480).

Unlike the plaintiffs in *Skinner* and *Lowery*, Swartz has offered more than "*post hoc* reasoning" here. Her theory of causation does not rest solely on the fact that her burn arose after exposure to the concentrated detergent. Instead, her theory is that a jury may infer causation based upon that temporal sequence *and* the absence of any other equally plausible causes for her burn. Thus, unlike the causation theories in *Skinner* and *Lowery*, Swartz's theory does not rest upon conjecture or speculation and is sufficient to withstand summary judgment.

P&G offers two counterarguments. First, P&G contends that the report of its dermatology expert, Dr. Jeffery Travers, demonstrates that Swartz's burn could have been caused by factors other than the chemicals in the POD. Thus, P&G argues that there are several equally-plausible theories of causation (just as in *Skinner* and *Lowery*). The Court disagrees. In Dr. Travers' "[c]onclusions," he opined that other factors – including Swartz's failure to remove her bra earlier and/or improper wound care – may have caused a "worse reaction." (ECF #27-6 at Pg. ID 474.) But it is one thing to say, as Dr. Travers did, that other factors may have caused a "worse" burn, and quite another to opine that the other factors could have caused the injury in the first place. The Court is not persuaded that Dr. Travers clearly identified other potential causes of the burn in the first instance.

Second, P&G argues that the results of a study concerning the effects of concentrated laundry detergent on exposed skin preclude a finding of causation here. In that study, twelve individuals were exposed to the chemicals contained in the PODs for four hours – a longer period of time than Swartz was exposed. (*See* ECF #27-8 at Pg. ID 527-29.) There was no evidence of skin irritation on any of the study participants following that exposure. (*See id.*) P&G says the study conclusively establishes that the concentrated detergent from the POD could not have, and did not, cause Swartz's burn. Again, the Court disagrees.

The study, which appears to have been appropriately conducted (*see* ECF #27-6 at Pg. ID 473), is certainly some evidence that the POD could not have, and did not, cause Swartz's burn. But it is a single study involving just twelve individuals. The Court is unwilling to conclude that such a small, isolated study establishes as a matter of law that the POD could not have caused Swartz's injuries. While P&G is free to present evidence about this study at trial, the Court is not persuaded that the study entitles P&G to summary judgment.

For all of these reasons, the Court concludes that P&G is not entitled to summary judgment on all of Swartz's claims on the basis that she failed to present sufficient evidence of causation. The Court will therefore proceed to evaluate each of Swartz's claims individually.

**B**

The Court turns first to Swartz's claim that P&G negligently and/or defectively designed the PODs. In this claim, Swartz asserts that the design of the PODs "cause[d] the film on the [PODs] to weaken over time" when exposed to water and moisture, "resulting in a compromised shelf life of the product." (Swartz Resp. Br., ECF #40 at Pg. ID 1542.) Swartz says that this design created an unacceptable risk that the PODs would "ruptur[e] through [their] ordinary course of use." (*Id.* at Pg. ID 1543.)

"Michigan has adopted what its courts have come to call the 'risk-utility' test for determining whether a plaintiff has made out a case for a product liability claim based upon a claimed design defect." *Peck v. Bridgeport Machines, Inc.*, 237 F.3d 614, 617 (6th Cir. 2001). In order to prevail on a design defect claim under Michigan law, a plaintiff must establish that:

> (1) the severity of the injury was foreseeable by the manufacturer;
>
> (2) the likelihood of occurrence of [the plaintiff's] injury was foreseeable by the manufacturer at the time of distribution of the product;
>
> (3) there was a reasonable alternative design available;
>
> (4) the available alternative design was practicable;
>
> (5) the available and practicable reasonable alternative design would have reduced the foreseeable risk of harm posed by defendant's product; and

> (6) the omission of the available and practicable reasonable alternative design rendered defendant's product not reasonably safe.

*Id.* at 617-18. Finally, to satisfy the "heavy burden" of a design defect claim, "expert testimony is required" to demonstrate the existence of a reasonable alternative design that would satisfy the elements of a plaintiff's claim. *Hendrian v. Safety-Kleen Sys.*, 2015 WL 4770966, at *5 (E.D. Mich. Aug. 13, 2015); *Lawrenchuk v. Riverside Arena, Inc.*, 542 N.W.2d 612, 614-15 (Mich. App. 1995) (granting summary disposition in favor of defendant on negligent design claim where plaintiff failed to produce admissible expert testimony).[4]

Swartz's negligent design claim fails because she has not presented any evidence that there was a reasonable and safer alternative design of the PODs or that such a reasonable alternative design was practicable. Swartz points only to opinions offered by D. J. Hartwig, a purported expert in product safety, but he did not opine about alternative possible designs. Indeed, he did not offer opinions about design issues at all. Instead, he opined that P&G "did not adequately test the safety" of the PODs, that "P&G knew of the hazardous nature of the POD ingredients," that "the film covering the POD could rupture," and that "P&G's cautionary wording on the

---

[4] The decision in *Lawrenchuk* "has been repeatedly cited for the proposition that expert testimony is required under Michigan law" in order to maintain a design-defect claim. *Olson v. Home Depot*, 321 F.Supp.2d 872, 876 (E.D. Mich. 2004).

POD packaging was inadequate." (ECF #40-7 at Pg. ID 1638-39.)  Thus, Hartwig's opinions cannot support Swartz's design defect claim, and the claim fails for lack of the required expert testimony.  *See Berry v. Crown Equipment Corp.*, 108 F.Supp.2d 743, 756 (E.D. Mich. 2000) ("In the absence of expert testimony concerning reasonableness of the plaintiff's proposed alternative design, a manufacturer is entitled to entry of judgment as a matter of law."); *Eiben v. Gorilla Ladder Co.*, 2013 WL 1721677, at \*16 (E.D. Mich. Apr. 22, 2013) ("Because the Court has determined that [plaintiff's alternative-design expert's] testimony is inadmissible, [p]laintiff now has no expert testimony to support his design defect claim, and this lack of evidence entitles [d]efendants to summary judgment on their design defect claim as a matter of law.").  Accordingly, P&G is entitled to summary judgment on Swartz's negligent and/or defective design claim.

## C

The Court next addresses Swartz's claim that P&G negligently manufactured the PODs and/or that the PODs suffered from a manufacturing defect.  She says that P&G manufactured the PODs in such a manner that the PODs "could stick together," causing them to "rupture" when they are "pulled apart." (Swartz Resp. Br., ECF #40 at Pg. ID 1544.)

Under Michigan law, "[a] manufacturer has a duty to manufacture a product to eliminate unreasonable risks of foreseeable injury." *Hammons v. Icon Health and*

*Fitness*, 616 F.Supp.2d 674, 681 (E.D. Mich. 2009). In order to succeed on a manufacturing defect claim, a plaintiff "must show that 1) the product was defectively manufactured, 2) the product reached the plaintiff in the same condition as it was when it left the manufacturer and 3) the defect was the proximate cause of the person's injuries or damages." *Id.* at 682.

Here, Swartz has not presented any evidence of P&G's manufacturing process or how the PODs were manufactured. Indeed, in the section of Swartz's response brief addressing P&G's argument on this point, she does not identify any relevant evidence related to the manufacturing process. (*See* Swartz Resp. Br., ECF #40 at Pg. ID 1541-45.) She instead insists the PODs could rupture when exposed to moisture. (*See id.*) But, a product's "malfunction … alone, [] is insufficient to support" a manufacturing defect claim. *Johnson v. Black & Decker (U.S.), Inc.*, 408 F.Supp.2d 353, 357 (E.D. Mich. 2005) (granting summary judgment to defendant manufacturer on design defect claim). Because Swartz has not presented any evidence that the PODs were defectively manufactured, P&G is entitled to summary judgment on her manufacturing defect claim. *See*, *e.g.*, *Auto Club Grp. Ins. Co. v. All-Glass Aquarium Co., Inc.*, 716 F.Supp.2d 686, 694 (E.D. Mich. 2010) (granting summary judgment to defendant on manufacturing defect claim where plaintiff's evidence, in part, "failed to identify a …fault in the manufacturing process").

## D

The Court now considers Swartz's failure-to-warn claim. This claim actually has two distinct components. Swartz first claims that P&G failed to warn her that the PODs could explode when removed from their packaging. She further claims that P&G failed to warn her that the chemicals that comprise the PODs could cause chemical burns to the skin. (*See* Swartz Resp. Br., ECF #40 at Pg. ID 1545-49.) Swartz contends that "[i]f [P&G] had included a warning on the packaging of the Tide Pods, which would have sufficiently warned [her] of the susceptibility of the product rupturing or exploding, and the fact that the product had the ability to cause burns to the skin, [she] would have had the ability to understand the dangers posed by the product." (*Id.* at Pg. ID 1546.)

"To establish a prima facie case of failure to warn" under Michigan law, "a plaintiff must prove that: (1) the defendant owed a duty to the plaintiff; (2) the defendant breached that duty; (3) the defendant's breach was a proximate cause of the plaintiff's injuries; and (4) the plaintiff suffered damages." *Eiben*, 2013 WL 1721677, at *9 (citing *Warner v. General Motors, Corp.*, 357 N.W.2d 689, 694 (Mich. App. 1984)). To satisfy the proximate cause element of the *prima facie* case, "a plaintiff must present evidence that the product would have been used differently had the warnings been given." *Hammons*, 616 F.Supp.2d at 684 (quoting *Mascarenas v. Union Carbide*, 492 N.W.2d 512, 517 (Mich. App. 1992)). A

plaintiff cannot establish proximate cause, and "no failure to warn claim will lie," where the plaintiff "did not read the warnings … before using [the product] on the date in question." *Eiben*, 2013 WL 1721677, at ** 17-18.

As explained below, both of Swartz's failure to warn theories fail because Swartz has not presented evidence that the alleged failures to warn caused her injuries.

**1**

Swartz's claim that P&G failed to warn her that the PODs could rupture when they are removed from their packaging fails because Swartz did not read any of the warnings on the POD packaging before she took the POD out of its package. She testified as follows at her deposition:

> Q: Did you read any of the words down here where it says caution or attention or anything like that? Did you read any of those words before you used the Tide PODs?

> A: Possibly. [….] I definitely remember looking at the back of the Tide PODs container after the incident. I do remember that, but remembering exactly what words I read, no.

> Q: I'm talking about before the incident.

> A: *I didn't read it before. I had no reason to.*

> [….]

> Q: Did you or did you not read the words on the package before you used the product? [….] Did you read any of the

words on the back of this package before you used the product?

A: Wash instructions. *Not the caution.* [….] *Not the cautions*.

[….]

Q: Had there been a caution about a pod bursting in this caution section of the label, you would not have read it because you didn't feel the need to read the caution section before you used the product, right? [….]

A: *I would not have – no, I would not have seen it because I did not read it.*

(Swartz Dep. at 53-55, ECF #27-2 at Pg. ID 376-77; emphasis added).[5]

Because Swartz did not read the relevant warnings, she cannot establish the required proximate cause element of her failure-to-warn claim. *See Eiben*, 2013 WL 1721677, at ** 17-18 (granting defendant summary judgment and holding that plaintiff who failed to read product warnings could not establish the required proximate cause element of his failure-to-warn claim). Indeed, her testimony establishes that even if P&G had provided an expansive, detailed warning about the risks of the PODs exploding, Swartz, in her own words, "would not have seen it."

---

[5] Later in her deposition, Swartz testified that "I'm aware" of the warnings on the POD packaging. (Swartz Dep. at 45, ECF #27-2 at Pg. ID 374.) But the fact that Swartz *now* knows what the warnings say is not evidence that she read the warning before removing the POD from its packaging.

P&G is therefore entitled to summary judgment with respect to this portion of Swartz's failure-to-warn claim.[6]

## 2

The undisputed evidence likewise shows that Swartz cannot establish the causation element of her claim that P&G failed to warn her that the chemicals contained in the POD could burn her skin. Swartz says that if P&G had provided such a warning, she would have taken the steps necessary to avoid suffering a burn on her breast.

However, it is clear that the allegedly-missing warning would not have enabled Swartz to avoid her injury. As noted above, Swartz claims that she suffered the chemical burn after moisture from the exploded POD soaked through her bra onto the skin of her left breast. But, after the POD burst, Swartz did not remove her bra because she "didn't think that [her] bra got any [detergent from the POD] on it." (Swartz Dep., ECF #27-2 at 36, Pg. ID 372.) Because Swartz did not believe that her bra had detergent on it, she would not have removed her bra even if the PODs featured a detailed warning about the risk of chemical burns from exposure to the detergent. Thus, the omission of such a warning did not cause Swartz's injury, and P&G is entitled to summary judgment for lack of causation on Swartz's second

---

[6] For all of these same reasons, Swartz is not entitled to summary judgment on this part of her failure-to-warn claim.

failure to warn theory. *See Eiben*, 2013 WL 1721677, at *17 (granting summary judgment on failure-to-warn claim where plaintiff failed to show that he would have changed his behavior if omitted warning had been included).

Moreover, the POD packaging *did* instruct Swartz that if her "skin or clothing" was exposed to the chemicals from the POD, that she should "remove [the] contaminated clothing and rinse the skin with water." (ECF #27-4.) Swartz followed these instructions and removed the clothing that she believed was sprayed with the contents of the POD, "washed her hands," and "took a wet paper towel and got [the chemicals] off [her] face" and other body parts immediately after the POD exploded. (Swartz Dep. at 37-38, ECF #27-2 at Pg. ID 373-74.) And Swartz did not suffer any "damages" or skin "irritat[ion]" to any of these body parts. (*Id.*) Swartz has therefore not shown how a different, more substantial warning would have prevented her chemical burn under these circumstances. For this additional reason, P&G is entitled to summary judgment on this portion of her failure-to-warn claim.[7]

### E

The Court now turns to Swartz's claim that P&G breached certain express warranties with respect to the PODs. (*See* Swartz Resp. Br., ECF #40 at Pg. ID 1549-

---

[7] For all of these same reasons, Swartz is not entitled to summary judgment on this part of her failure-to-warn claim.

51.) The creation of express warranties under Michigan law is governed by Mich. Comp. Laws § 440.2313. That statute provides in relevant part:

> (1) Express warranties by the seller are created as follows:
>
> (a) An affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.
>
> (b) A description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.
>
> (c) A sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model.
>
> (2) It is not necessary to the creation of an express warranty that the seller use formal words such as "warrant" or "guarantee" or that he or she have a specific intention to make a warranty, but an affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty ....

Mich. Comp. Laws § 440.2313.

P&G is entitled to summary judgment on this claim because Swartz has not pointed to any express warranties that P&G allegedly made and then breached. Indeed, at the hearing on the pending motions, the Court asked Swartz's counsel to specifically identify what words comprise Swartz's express warranty claim, and counsel was unable to do so. Instead, counsel argued that Swartz's express warranty claim was based on Swartz's *expectation* of how the Tide PODs would perform. But

"the fact that a buyer may have an 'understanding' does not give rise to an express warranty under Mich. Comp. Laws § 440.2313 when no express statement of warranty has been made." *Dow Corning Corp. v. Weather Shield Mfg., Inc.*, 790 F.Supp.2d 604, 611 (E.D. Mich. 2011). Swartz simply has not identified any actual express warranty made by P&G with respect to the PODs. Therefore, her express warranty claim fails.

## F

Finally, the Court addresses Swartz's claim that P&G breached its implied warranty that the PODs would be fit for their intended use. P&G insists that Swartz's implied warranty claim is duplicative of her negligent design/design defect claim, and that the claim fails for the same reasons that her negligent design claim failed. (*See* P&G Mot., ECF #27 at Pg. ID 357-58.) The Court disagrees.

"As a general rule, [a] negligence action focuses on the conduct of the manufacturer, whereas implied warranty focuses on the condition of the product." *Sundberg v. Keller Ladder*, 2001 WL 1397290, at *5 (E.D. Mich. Nov. 8, 2001). "These theories are not always mutually exclusive." *Id.* Indeed, where a plaintiff's implied warranty claim goes beyond alleging a defective design, "the two causes of action remain separate theories with distinct elements." *Id.* For example, "[w]here a plaintiff does not so limit an implied warranty claim, a plaintiff need only allege that the product is not fit for its intended use." *Jacobs v. Tricam Industries, Inc.*, 816

F.Supp.2d 487, 495 (E.D. Mich. 2011). And while a negligent design claim requires expert testimony and evidence of a practicable alternative design (*see* discussion in section IV(B) above), "the expert requirement … does not extend to breach of implied warranty claims that are not premised on negligent design." *Id. See also Olsen v. Home Depot*, 321 F.Supp.2d 872, 877 (E.D. Mich. 2004) ("[T]his Court concludes that the expert requirement does not extend to breach of implied warranty claims"). Thus, "[t]he requirements for an implied warranty cause of action [] are less stringent" then a negligent design claim. *Sundberg*, 2001 WL 1397290, at *5; *Olsen*, 321 F.Supp.2d at 877 (noting that "warranty claims require less stringent proof" than negligent design claims under Michigan law).

To establish a breach of implied warranty claim under Michigan law, a plaintiff "need only show (1) the product in question was defective when the defendant sold or otherwise placed it in the stream of commerce, and (2) that the defect caused her injury." *Sundberg*, 2001 WL 1397290, at *6. To satisfy the defectiveness element, a plaintiff must show that a product was not "reasonably fit for its intended, anticipated, or reasonably foreseeable use." *Bouverette v. Westinghouse Elec. Corp.*, 628 N.W.2d 86, 90 (Mich. App. 2001) (quoting *Gregory v. Cincinnati, Inc.*, 538 N.W.2d 325, 339 (Mich. 1995)). To satisfy the causation element, "a plaintiff need only demonstrate a logical sequence of cause and effect between the alleged defect and the injury." *Sundberg*, 2001 WL 1397290, at *6.

Here, Swartz has not limited her implied warranty claim to a defective design theory, and she has satisfied both elements of the implied warranty test described above. She has presented evidence that the POD at issue was not reasonably fit for its intended use – it ruptured in her hands before being placed in her family's washing machine where it was supposed to dissolve – and, for all of the reasons described in section IV(A) above, she has demonstrated "a logical sequence of cause and effect between the alleged defect and [her] injury." *Id.*[8] Accordingly, because a jury could reasonably conclude that P&G breached its implied warranty, P&G is not entitled to summary judgment on Swartz's implied warranty claim.

## V

For all of the reasons stated above, **IT IS HEREBY ORDERED** that:

- P&G's motion for summary judgment (ECF #27) is **DENIED** with respect to Swartz's implied warranty claim and **GRANTED** in all other respects; and

- Swartz's motion for partial summary judgment (ECF #33) is **DENIED**.

s/Matthew F. Leitman
MATTHEW F. LEITMAN
UNITED STATES DISTRICT JUDGE

Dated: May 16, 2018

---

[8] The cases that P&G relies on its supplemental brief – *Auto Club*, 716. F. Supp. 2d at 690-91, *Paquin v. Control Chief Corp.*, 2009 WL 1174457, at *7 (W.D. Mich. Apr. 29, 2009), and *Istvan v. Honda Motor Co., Ltd.*, 2010 WL 125844, at *6 (E.D. Mich. Mar. 25, 2010) (*see* ECF #46 at Pg. ID 1790-92) – are distinguishable. In each of those cases the plaintiffs did not present sufficient evidence of causation. For all of the reasons stated in section IV(A) above, the Court concludes that Swartz has shown the required causation here.

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on May 16, 2018, by electronic means and/or ordinary mail.

s/Holly A. Monda
Case Manager
(810) 341-9764